# United States Court of Federal Claims

No. 12-208 C
(Filed Under Seal: February 28, 2017)
(Reissued: March 15, 2017)[*]

_____

**GAYLE GORDON, M.D. and
TERESA MAXWELL, M.D.,**

      *Plaintiffs,*

**v.**

**UNITED STATES OF AMERICA,**

      *Defendant.*

_____

Cross-Motions for Summary
Judgment; Gender-based Pay
Bias; Yearly Salary-Range Tables;
Retention Incentive Pay

*James E. Nickels, Esquire,* Nickels Law Firm, Sherwood, AR, for plaintiffs.

*Kara M. Westercamp, Esquire*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION AND ORDER

**Hodges,** *Senior Judge*.

      This is an Equal Pay Act case. Plaintiffs are female doctors who work in the Department of Emergency Medicine at a Veterans Administration Hospital in Arkansas. Doctors Gayle Gordon and Teresa Maxwell believe that they are victims of gender discrimination, primarily for two reasons: (1) they did not receive raises in 2009 when a male doctor who was hired about the same time received an annual raise; and (2) they did not receive raises in 2010 commensurate with those obtained by male doctors in the same department.

      A male colleague hired around the same time as plaintiffs in 2008 received a pay raise one year later, though Dr. Gordon and Dr. Maxwell were not eligible for market pay increases until 2010;[1] they received only step increases for longevity. Either the male colleague, Dr.

---

[*] The parties filed no proposed redactions to the sealed Opinion filed on February 28, 2017. The Opinion is reissued this date, unsealed.

[1] Market pay is a subset of the total pay received by a physician which reflects the recruitment or retention incentives necessary to compensate that physician for their employment. Several factors are taken into account when determining market pay, including experience, the needs of

Iftikhar Ali, was not subject to a probationary period, or he received a market pay raise notwithstanding the probation; the record does not say.

Male doctors in the same department doing the same or similar work as plaintiffs obtained raises during 2010, but plaintiffs did not. Defendant alleged that the reason they did not get raises then was they did not meet a disputed requirement that doctors submit their current resumes for consideration by their pay panels. Dr. Gordon may not have provided her resume in the proper form. Dr. Maxwell submitted her resume and her pay panel recommended a raise to $212,000. However, the raise was rescinded because it did not receive final approval until after the Obama Administration imposed a pay freeze in December of 2010.

Pay panels were charged with the responsibility of reviewing doctors' records to decide whether to recommend raises for them. The panels relied on current resumes in part to make those judgments. Defendant contends that plaintiffs' failure to provide required career information caused delays that resulted in their not receiving raises prior to implementation of the freeze. Plaintiffs allege that the requirement for updated resumes was a pretext that allowed the VA to discriminate against plaintiffs on the basis of gender. Alternatively, plaintiffs stated that they did submit the required information to their pay panels in a timely manner.

Defendant insists that plaintiffs' resumes, if submitted, did not reach appropriate personnel for delivery to the pay panels; the pay panels could not consider raises for plaintiffs prior to the freeze for that reason. All or most of the male doctors provided the required information to their pay panels on a timely basis, and they received raises in 2010 before the freeze.

Several issues important to application of the Equal Pay Act remained uncertain after briefings by the parties, and we sought supplemental arguments to enlighten various legal and factual issues. Counsel made conscientious efforts to address these concerns, and their responses provided valuable clarifying information.

Plaintiffs have not shown that discrimination was the reason for Dr. Ali's raise one year after being hired, or for the VA's delays in processing their raises in time to avoid the pay freeze. For reasons discussed more fully below, we must grant defendant's motion for summary judgment and deny plaintiffs' cross-motion.

## BACKGROUND

Dr. Gordon and Dr. Maxwell were hired by the Veterans Administration in 2008 to medical staff positions in the Emergency Room of a Little Rock, Arkansas hospital. An initial compensation panel assessment set their total annual pay at $195,000. Subsequent pay panels recommended increasing their total compensation to $197,721 the following year, in October 2009, reflecting step increases in their base pay. The VA advised plaintiffs that they would be

---

the hiring facility, the regional market for practitioners, professional certifications, and other factors. *See* 38 U.S.C. §7431(c)(2), 38 U.S.C. §7431(c)(5)(A-F).

eligible for market pay raises after two probationary years.[2] Doctors Gordon and Maxwell were to be reviewed by new pay panels biennially thereafter, beginning in November 2010.

Dr. Ali is a male doctor in plaintiffs' department who was hired at about the same time as plaintiffs, at the same salary. He received a market pay raise from the VA after one year, while plaintiffs had only step increases for the first two years. This was an event of alleged disparate treatment complained of by plaintiffs to support their case against the VA for discrimination on the basis of gender. Plaintiffs' attorney characterized Dr. Ali's raise in 2009 as "the first equal pay violation" in the case.

Dr. Ali's employment at the VA was important to plaintiffs' case not only because of the 2009 raise but also because they learned that he may not have provided a current resume to his 2009 pay panel. Defendant has emphasized repeatedly the importance of delivering current career information to pay panels before a doctor could be considered for a raise.

Near the end of plaintiffs' second year as emergency room physicians, hospital officials asked them to submit updated resumes so their pay panels could review their credentials. For reasons that remain unclear, Dr. Gordon may have resisted this requirement for a time, as did Dr. Maxwell. As a result, Dr. Gordon's pay panel did not meet before a coincidental pay freeze became effective on December 17, 2010.[3]

Dr. Maxwell ultimately submitted a current resume in time for her pay panel to meet on December 21, and the panel recommend that her salary be raised to $212,000. However, pay panel recommendations were subject to final approval by the Chief of Staff, Dr. Margie Scott. Dr. Scott thought that she had no choice but to reject the raise for Dr. Maxwell because the freeze had become effective on December 17.

Plaintiffs' first post-freeze pay panels met on February 18, 2014, about 60 days after the Administration lifted the pay freeze on December 23, 2013. Exec. Order No. 13655, 78 Fed. Reg. 80,451 (Dec. 23, 2013). The pay panels acknowledged that plaintiffs' pay was low relative to other physicians in their department, and recommended increases in their total pay to $216,747.

## APPLICABLE LAW

Congress passed the Equal Pay Act to provide a cause of action for gender discrimination in the workplace. *See* 29 U.S.C. §206. Section 206(d)(1) states, "[n]o employer . . . shall discriminate . . . between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." The Act includes exceptions for circumstances in which

---

[2] The issue of plaintiffs' two-year probation was mentioned only tangentially in a declaration; it was not discussed substantively by either party in their briefs.

[3] The Obama administration imposed a government-wide freeze on pay raises in 2010, and extended it several times between 2011 and 2013. *See* Exec. Order No. 13561, 75 Fed. Reg. 81,817 (Dec. 22, 2010); Exec. Order No. 13594, 76 Fed. Reg. 80,191 (Dec. 19, 2011); Exec Order No. 13635, 78 Fed. Reg. 649 (Dec. 27, 2012); Exec. Order 13641, 78 Fed. Reg. 21,503 (Apr. 5, 2013).

disparate wages are paid "pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . ." 29 U.S.C. §206(d)(1).

Plaintiffs' legal theories in support of their Equal Pay Act claim are scant and relatively undeveloped. They contend that the VA used pretext and subterfuge to mask intentional sex discrimination, referring to defendant's request that they submit current resumes for consideration by their pay panels. They charge that defendant "lied" when the VA told Dr. Gordon that she did not submit a current resume in time for her raise to be considered, because Dr. Maxwell "did not receive a market pay raise despite submitting her resume on time." This assertion is incomplete and therefore misstated and misleading. Dr. Maxwell submitted her resume and was recommended for a raise to $212,000. That raise was denied later solely because of the pay freeze.

Plaintiffs also accused defendant of lying for telling Dr. Gordon that she would not be eligible for a raise for two years because she was subject to probation. This claim was not true, they contend, because Dr. Ali received a market pay raise after only one year. Dr. Ali's raise after one year does not show that defendant lied about Dr. Gordon's two-year probation. The record does not show whether Dr. Ali was ever subject to the same two-year probation as Dr. Gordon, or to a lesser probation.[4] The probation issue was not otherwise argued, was irrelevant on this record, and certainly was not the basis for a "lie."

The affirmative defenses accorded defendants in an Equal Pay Act case include "a seniority program." Plaintiffs attack the VA's claim that certain male doctors in the emergency department received higher salaries because they were supervisors or had supervisory experience. Those doctors' higher salaries provided evidence of discrimination because plaintiffs were not aware that the doctors had duties different from those performed by other doctors in the emergency room. One plaintiff did not know that a male doctor was her own supervisor. Plaintiffs themselves had supervisory duties before working at the VA, they state, but were not given credit for that experience.[5]

Affidavits submitted by the VA establish that supervisors in plaintiffs' department of the hospital had additional duties and responsibilities despite plaintiffs' not being aware of them. *See Marshall v. Dallas*, 605 F.2d 191, 195 (5th Cir. 1979) ("Wage differentials can be justified when employees perform important differentiating tasks, even if they do not spend large amounts of time performing those tasks.").

Plaintiffs must show that higher-paid employees were "comparators" before they can establish discrimination on the basis of pay differentials; that is, their salaries were less than those of employees of the opposite sex whose duties are "virtually identical" to plaintiffs' own.

---

[4] Plaintiffs did not argue that the possibility of Dr. Ali's not being subjected to a probation, similar to those applied to plaintiffs, was proof of disparate treatment and gender discrimination.

[5] Plaintiffs' complaining that they were not credited with supervisory experience offers unintentional support for management's emphasis on the need for resumes that are current and complete; pay panels could not have known of such experience if the doctors did not include it on their resumes.

*Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir. 1973). Initially, plaintiffs did not identify male doctors whose duties could be considered comparable to plaintiffs' for purposes of the Equal Pay Act. They explained in a reply brief that all male doctors in the department were comparators for the purposes of this law. Meanwhile, defendant contends that no male doctor in the case was a comparator under the Act.[6] We have not addressed the issue of comparators in depth because the decision in this case renders it moot.

## AGENCY PROCEDURES

Pay for doctors employed at Veterans Administration hospitals is governed by 38 U.S.C. §7431. That statute outlines discrete tiers of employment containing varying levels of administrative or professional responsibility and describes the types of pay that comprise annual salary. Subsidiary pay tables define ranges of pay for doctors depending on their specialty or field of practice, including emergency medicine. Plaintiffs qualified as staff physicians practicing emergency medicine when hired. This designation placed them within Tier 1 of Pay Table 2, and established a salary range of $90,000 — $200,000.

VA Handbook 5007 describes procedures for setting and administering pay for doctors. Base pay is determined principally by experience, and standardized step increases recognize an employee's longevity or tenure with the agency. Market pay is determined by a combination of factors, including experience practicing a given specialty, regional and national rates of pay for other practitioners in that specialty, academic experience, board certifications, a facility's specific practitioner needs, and other case-by-case considerations. The Handbook authorizes pay incentives to recruit or retain a doctor, or to compensate his or her relocation to the area.

Pay panels consisting of at least three doctors, a managerial chair, and a human resources representative recommend salary levels based on these factors. They convene at the initial point of hire and at least once every other year thereafter. Senior staff at the facility have final authority to approve the pay panels' recommendations.

## ARGUMENTS

**A. Could the VA have given plaintiffs market raises during the freeze to bring their salaries more in line with their male colleagues?**

Defendant contends that the freeze effectively prohibited all pay increases for physicians employed at the hospital. The extent of these restrictions and whether exceptions could be made are strongly disputed by the parties and not entirely resolved by this Opinion. Plaintiffs contend that the following language taken from a VA Management Letter permits some raises during the freeze:

> "While the Annual Pay Ranges for Physicians and Dentists will not be increased during the pay freeze, individualized market pay adjustments within the frozen ranges are permitted. However, consistent with the spirit of the President's

---

[6] Plaintiffs' contention that everyone is a comparator and defendant's claim that no one is, seem highly unlikely given the facts of this case. Neither assertion contains more than negligible support or discussion; both are conclusory.

memorandum regarding the pay freeze, management officials should make market pay adjustments in a prudent manner based on strategic needs."

U.S. Dep't of Vet. Affairs, Dep. Asst. Sec'y for Human Res. Mgmt., "Human Resources Management Letter No. 05-11-06: Pay Administration Guidance Regarding the Freeze on Pay Adjustments for Certain Federal Civilian Employees", §3(c)(1) (June 2, 2011). Defendant highlights one part of the Management Letter to show that the Letter "prohibits" raises during the freeze: "[M]anagement officials should make market pay adjustments *in a prudent manner based on strategic needs.*" (Emphasis ours.) Defendant explains that the term, "strategic needs," has a special meaning that relates to the pressures of recruitment and retention, and potentially other management concerns. For a manager to be "prudent," he or she must consider all of a number of other factors.[7]

### B. The Resume Requirement

An important contested issue in the case is whether current resumes were necessary for the pay panel to meet and consider doctors' raises. Lack of current resumes for plaintiffs' pay panels was the reason defendant gave for plaintiffs' substantially lower salaries compared to those of male doctors during the period of this lawsuit. According to defendant, the resume requirement was the "procedural mechanism that initiates the review of a physician's pay."

The record offers little support for defendant's assertion that pay panels could not meet without having received current resumes in advance. VA Regulations require that pay panels review doctors' resumes in making recommendations for raises, and provide that doctors are responsible for updating their resumes. Certainly, resumes would supply important information for pay panels to consider. However, this does not necessarily establish that pay panels were required to have *current* resumes before they could meet. Plaintiffs see no reason why the panels could not have used earlier resumes they submitted for earlier raises.[8]

Plaintiffs asserted that some male doctors were considered for raises by their pay panels even though they did not provide current resumes in advance.[9] Defendant's contention that such information was a necessary adjunct to the pay panels' consideration of raises for plaintiffs was a pretext or a "subterfuge." As a result, defendant could not use its otherwise gender-neutral resume requirement to show that male and female doctors were treated the same.

---

[7] In addition to standard criteria for assessing adjustments to market pay, the Letter directs that increases in market pay address: essential skills unique to the individual employee; the scarcity of alternative hires in the individual's specialty or within the local labor market; the availability and quality of candidates; salaries paid for similar specialties within the local labor market; or other situations or unique circumstances which indicate a market pay increase is necessary.

[8] We surmised that perhaps pay panels needed current resumes in case they contained *negative* information before recommending pay raises. No one argued this possibility, however.

[9] Plaintiffs' evidence for this assertion amounted to a review of all male doctors' personnel files to determine that more raises were approved during the applicable period than resumes were found. Such a method for supporting plaintiffs' conclusion was not particularly persuasive. The resumes generally did not include dates of submission.

Defendant claimed that an authorized government employee asked repeatedly for current resumes from plaintiffs and did not receive them in time for consideration by the pay panels. Dr. Gordon argued that she delivered "credentials" to the pay panel as early as June 2010, but no direct evidence supports this contention. The record contains a letter from the hospital's Credentialing Committee advising that her contract had been renewed. However, this letter does not in itself prove that she delivered the credentials to the Committee or that they were received. We can assume that her representations in this regard are true for the purposes of ruling on summary judgment, but whether the credentials packet contained her resume remains unclear.

If plaintiffs thought they delivered the resumes on time, and defendant swears that it never received them, the resume issue is reduced to a disputed fact that cannot be resolved on summary judgment. However, no evidence of record suggests that defendant's representative received the resumes but did not deliver them in an attempt to discriminate against plaintiffs on the basis of gender. The importance of a resume requirement to the agency was supported by affidavits of VA officials who denied any efforts to discriminate.

We are not satisfied that the resume requirement should have been necessary in all respects, but it was reasonably related to defendant's expressed agency needs. More importantly, the requirement was not applied unevenly, and it did not therefore have potential for gender discrimination.

### C. The 2009 Raise for Dr. Ali

The record does not show why or how the VA gave Dr. Ali a pay boost in 2009 rather than in 2010, when others in the department received raises according to the new pay tables. He might not have been subject to a probation as Doctors Gordon and Maxwell were, or his probation might have been for a shorter period. He might have presented a threat to leave for a higher salary. If a period of probation was required by statue or regulation, plaintiffs did not argue the point. In fact, neither of the parties argued these possibilities substantively.

Dr. Ali was hired at about the same time as plaintiffs in 2008, and their beginning salary of $195,000 approached the $200,000 Tier 1 ceiling at the time. While the 2008 hiring of Doctors Gordon, Maxwell, and Ali appeared to have been an equal hire among the three, this equality might have been artificially imposed because of the $200,000 Tier maximum. When the maximum pay for Tier 1 doctors was raised to $220,000 the following year, Dr. Ali qualified for a higher salary based on his professional achievements and other credentials. His raise in 2009 could have been an effort to take advantage of the new, higher pay tables that year.[10]

### CONCLUSION

The Administration's pay freeze affected only two doctors in the department disproportionately, and those two were female. This circumstance understandably created suspicions of the cause among plaintiffs and their supporters. However, a careful review of the record shows that the cause was not discrimination, but a coincidence of timing. The two female doctors in the department, Dr. Gordon and Dr. Maxwell, delayed the VA's bureaucratic process long enough to become stranded by an unrelated pay freeze.

---

[10] These possibilities were not argued by the parties, and their validity is not necessary to the ruling.

As documentation expected by the agency was delayed, or was missing entirely, the window of time for a pay panel to meet and make its recommendation moved closer to late December 2010, when unbeknownst to either party, the pay freeze would be imposed.[11] Factors unrelated to prohibitions of the Equal Pay Act caused plaintiffs to become subject to the 2010 pay freeze and fall well behind the annual salaries of their male colleagues. Dr. Maxwell's recommended raise to $212,000, later rescinded, shows that timely cooperation with VA requirements would have likely guaranteed substantial raises for both plaintiffs.

Dr. Ali, a male colleague who was hired at the same time as plaintiffs, received a raise after his first year of employment while plaintiffs' were ineligible for raises until 2010. The reason for this apparent disparity remains unclear and essentially unexplained by the parties. However, no evidence in the record suggests that gender discrimination was the cause of plaintiffs' delayed raises; substantial testimony from hospital management emphasizes that it was not.

Defendant's Motion for Summary Judgment is GRANTED. Plaintiffs' Cross-Motion is DENIED. Plaintiffs' Motion for Partial Summary Judgment is DENIED. The Clerk of Court will dismiss plaintiffs' Complaint. No costs.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*
Robert H. Hodges, Jr.
Senior Judge

---

[11] Administrative proceedings of the federal Government take time to prep, schedule, hold, review, and finalize. For example, plaintiffs' pay panels needed 60 days after the freeze ended to meet and recommend non-controversial pay increases that defendant agreed were due and warranted.